## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | CHAPTER 11 |
| | ) | |
| PITT PENN HOLDING CO., INC., *et al.*[1] | ) | Case No. 09-11475 (BLS) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| Industrial Enterprises of America, Inc., on behalf of | ) | |
| Itself, its estate and as assignee of its shareholders, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Proc. No. |
| | ) | |
| v. | ) | |
| | ) | |
| Bruce Badeau, Doris Blau, Hunter M.A. Carr, | ) | |
| Bernard J. Clinton, Roger W. Creery, Kenneth Crimmins, | ) | |
| Merrilee Parker Crimmins, Michael Patrick Crimmins, | ) | |
| Johnny Deshotels, Lee Elwan, Mark Glatz, | ) | |
| Marla Goodman, Graham Jones, Timothy J. Lawler, | ) | |
| John Lindstrom III, Richard Loggie, Richard Martini, | ) | |
| Merchant BanCorp of America, Nexcore Capital Inc., | ) | |
| Northpoint Partners LLC, James O'Callaghan, | ) | |
| Charles Pedrani, John C. Pelegrino, William Peterson, | ) | |
| Quest Capital Markets, Inc., Myrna Robbins, | ) | |
| Ruden McClosky Smith Schuster and Russell, | ) | |
| Donald Sapaugh, Michael Joseph Seidelhuber, and | ) | |
| Neville West, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## **COMPLAINT**

Plaintiff Industrial Enterprises of America, Inc. (hereafter "IEAM"), formerly known as

Advanced Biochem Inc., respectfully alleges the following as its complaint against Defendants

Bruce Badeau, Doris Blau, Hunter M.A. Carr, Bernard J. Clinton, Roger W. Creery, Kenneth

Crimmins, Merrilee Parker Crimmins, Michael Patrick Crimmins, Johnny Deshotels, Lee Elwan,

---

[1] The debtors are:  Pitt Penn Holding Co. (Case No. 09-11475), Pitt Penn Oil Co. LLC (Case No. 09-11476), Industrial Enterprises of America, Inc. (Case No. 09-11508), EMC Packaging, Inc. (Case No. 09-11524), Today's Way Manufacturing LLC (Case No. 09-11586), and Unifide Industries LLC (Case No. 09-11587), all of which have been jointly administered

Mark Glatz, Marla Goodman, Graham Jones, Timothy J. Lawler, John Lindstrom III, Richard Loggie, Richard Martini, Merchant BanCorp of America, Nexcore Capital Inc., Northpoint Partners LLC, James O'Callaghan, Charles Pedrani, John C. Pelegrino, William Peterson, Quest Capital Markets, Inc., Myrna Robbins, Ruden McClosky Smith Schuster and Russell, Donald Sapaugh, Michael Joseph Seidelhuber, Neville West (collectively, "Defendants").

## JURISDICTION AND VENUE

1.    This Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(b).

2.    This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3.    Venue of this matter is proper under 28 U.S.C. § 1409.

## OVERVIEW OF THE ACTION

4.    This action arises out of the receipt by defendants of approximately 890,220 shares of freely traded stock in a company called Industrial Enterprise of America ("IEAM"). Such stock was worth at least $4,388,166. Defendants paid no consideration for this stock. Rather, defendants received this stock as part of a fraudulent scheme perpetrated by two senior executives of IEAM, John Mazzuto and James Margulies and others. Defendants knew or should have known of the illegal scheme, and therefore knew or should have known that their receipt of the stock at issue was illegal. Through this action, plaintiff seeks a return of the value received by the defendants in IEAM stock illegally provided to them.

5.    This is one of many actions undertaken to address the illegal conduct of the affairs of IEAM and its subsidiaries. Prior management conducted IEAM's affairs through a pattern of illicit activity that belied the legitimate public company that it was supposed to be, and outwardly was. Prior management, along with its cohorts including the defendants, took possession of IEAM's public company form, engaged in systemic fraud as to the bona fides of its operations, manipulated the price of its publicly-trading securities, and illicitly cashed in on this conduct by

rewarding themselves and those who participated in the fraud with them through the illicit issuance and sale of securities. This systemic and fraudulent enterprise caused substantial harm to IEAM and its unsuspecting investors.

6.      IEAM's affairs were corrupted through the existence and conduct of an association-in-fact of persons and entities that operated separately from the legal structure of IEAM. This association-in-fact, of which the Defendants were a part, was lead by former IEAM Chief Executive John Mazzuto. Thus, for convenience of reference here, this illicit association-in-fact shall be referred to as the "Mazzuto Scheme." The Mazzuto Scheme was a complex and deliberate association-in-fact conceived for, and dedicated to, the commission of systemic fraud in the operations and securities of IEAM. IEAM, through its new management, has identified numerous persons and entities Enterprises that participated in the Mazzuto Scheme's illegal scheme to loot IEAM.

7.      From 2002 to 2009, the Mazzuto Scheme, through its members including the Defendants, set out and accomplished its basic illegal aim: to seize control of a publicly-traded corporation, to conduct its business affairs in a fraudulently successful manner to increase its market value and share price, to further fraudulently manipulate the price of its stock higher through false operations and transactions (including, but not limited to, false stock offerings, fraudulent stock transfers and issuances, and fraudulent public statements and filings), and to "cash in" on the fruits of their illicit labors through the illegal transfer and sale of IEAM's securities.

8.      The Mazzuto Scheme included many participants, including, but not limited to, accountants, lawyers, broker-dealers, registered representatives, public relations professionals, stock promoters, and others who willingly participated in the systemic fraud through conduct reflecting their particular skill set. This participation was rewarded, for example, with monetary

incentives in the form of free (or deeply discounted) and unrestricted IEAM stock that was illegally issued and to which they were not entitled. Moreover, as in the case of professional persons who participated in the fraud through willingly advancing the Mazzuto Scheme's illicit purposes under the guise of providing "professional services," these persons were well compensated for what often amounted to the rendering of malpractice. The Mazzuto Scheme, inter alia, engaged in the following conduct to advance its illicit conduct:

    a.     Drafting, approving, and filing public disclosures that were false;

    b.     Drafting, approving, and issuing false public statements;

    c.     Conducting false meetings with existing and prospective investors and IEAM directors;

    d.     Falsely inflating IEAM's earnings through the fraud;

    e.     Purposefully using corrupted accounting professionals to advance the decentralization of the corporate books, records, and accounts in order to further the manipulation of company operations and prevent the detection of such manipulation;

    f.     Using of corrupted lawyers to prepare false transaction documents, side agreements, and to engage in litigation designed to obscure the company's true operations as well as to prevent the detection of the fraud;

    g.     Illegally issuing securities to Mazzuto Enterprise associates both to reward participation in the Enterprise as well as to advance the manipulation of the price of IEAM's stock.

9.     The fraud perpetrated by the Defendants and their co-conspirators caused direct and proximate harm to IEAM, including monetary losses and liabilities, in excess of $150 million dollars. Moreover, IEAM's shareholders lost hundreds of millions of more dollars as a direct and intended result of the Defendants' fraud.

10.     Former officers Margulies and Mazzuto were arrested and indicted for their roles in the fraud perpetrated on IEAM, its creditors and its investors, in a fifty-seven count indictment ("Indictment"), which names ten additional co-conspirators. Meanwhile, on April 30, 2009, Robert L. Renck, Jr. was appointed its CEO and President. IEAM is also the assignee of its shareholders' claims.

## THE PARTIES

11.     Plaintiff IEAM is a corporation organized under the laws of the State of Nevada, with its principal place of business located in Pennsylvania at 651 Holiday Drive, Suite 300, Pittsburgh, Pennsylvania 15220.  IEAM is a holding company for businesses in packaging and distribution for sale of aftermarket automotive and related products.  On or about May 1, 2009 IEAM filed for bankruptcy protection in the U.S. District Court for the District of Delaware.

12.     Upon information and belief, defendant Bruce Badeau is a resident of the State of Texas.  He received restricted shares on or about March 9, 2005, at the time EMC was acquired by IEAM.

13.     Upon information and belief, defendant Doris Blau is a resident of the United States of America.  She was issued shares registered as employee stock by an S-8 registration for IEAM on or about September 21, 2006 by certificate 004045.  Upon information and belief, she was not an "employee" of IEAM or its predecessor Advanced Bio/Chem Inc.

14.     Upon information and belief, defendant Hunter M.A. Carr is a resident of the State of Texas.  He was issued shares registered as employee stock by an S-8 registration for IEAM on or about June 3, 2005.  Upon information and belief, he was not an "employee" of IEAM or its predecessor Advanced Bio/Chem Inc.

15.     Upon information and belief, defendant Bernard J. Clinton is a resident of the State of California.  He was issued shares registered as employee stock by an S-8 registration for IEAM on or about September 20, 2005.  Upon information and belief, he was not an "employee" of IEAM or its predecessor Advanced Bio/Chem Inc.

16.    Upon information and belief, defendant Roger W. Creery is a resident of the State of Texas. He was issued shares registered as employee stock by an S-8 registration for IEAM on or about February 16, 2006. Upon information and belief, he was not an "employee" of IEAM or Advanced Bio/Chem Inc.

17.    Upon information and belief, defendant Kenneth Crimmins is a resident of the State of Texas. He was issued shares registered as employee stock by an S-8 registration for IEAM on or about February 15, 2005. Upon information and belief, he was not an "employee" of IEAM or Advance Bio/Chem Inc.   The shares were issued in two equal lots for minors defendant Merrilee Parker Crimmins and defendant Michael Patrick Crimmins to defendant Kenneth Crimmins under the Uniform Gift to Minors Act.

18.    Upon information and belief, defendant Johnny Deshotels is a resident of the Country of Ireland. On or about September 2, 2005, he was issued shares on a free trading basis, although those shares issued were registered as employee stock by an S-8 registration for EIAM and should not be issued free trading.   Shares were issued to him in connection with LNG Consulting.

19.    Upon information and belief, defendant Lee Elwan is a resident of the State of New York. On or about December 22, 2005 and May 17, 2007, he was issued shares registered as employee stock by an S-8 registration for IEAM. Upon information and belief, he was not an "employee" of IEAM or Advanced Bio/Chem Inc.

20.    Upon information and belief, defendant Mark Glatz is a resident of the Commonwealth of Pennsylvania.   On or about March 9, 2005 and April 20, 2007, he was issued shares registered as employee stock by an S-8 registration for IEAM. Upon information and belief, he was not an "employee" of IEAM or Advanced Bio/Chem Inc.

21.    Upon information and belief, defendant Marla Goodman is a resident of the State of New York.  On or about August 20, 2007 she was issued shares, by certificate 004134, registered as employee stock by an S-8 registration for IEAM.  Upon information and belief she was not an "employee" of IEAM or Advanced Bio/Chem Inc.

22.    Upon information and belief, defendant Graham Jones is a resident of the United States of America.  On or about September 21, 2006 he was issued shares, by certificate 004004, registered as employee stock by an S-8 registration for IEAM.  Upon information and belief he was not an "employee" of IEAM or Advanced Bio/Chem Inc.

23.    Upon information and belief, defendant Timothy J. Lawler is a resident of the State of California.   On or about September 29, 2006 he was issued shares, by certificates 004051 and 004052, registered as employee stock by an S-8 registration for IEAM.  Upon information and belief he was not an "employee" of IEAM or Advanced Bio/Chem Inc.

24.    Upon information and belief, defendant John Lindstrom III is a resident of the State of California.   On or about September 19, 2005 he was issued shares registered as employee stock by an S-8 registration for IEAM.  Upon information and belief, he was not an "employee" of IEAM or Advanced Bio/Chem Inc.

25.    Upon information and belief, defendant Richard Loggie is a resident of the State of New York.  On or about September 21, 2006 he was issued shares, by certificate 004047, registered as employee stock by an S-8 registration for IEAM.  Upon information and belief he was not an "employee" of IEAM or Advanced Bio/Chem Inc.

26.    Upon information and belief, defendant Richard Martini is a resident of the United States of America.  On or about August 23, 2006 he was issued shares registered as employee stock by an S-8 registration for IEAM.  Upon information and belief, he was not an "employee" of IEAM or Advanced Bio/Chem Inc.

27.     Upon information and belief, defendant Merchant BanCorp of America is a corporation formed and existing under the laws of the Country of Canada, with headquarters located in the City of Montreal. On or about July 28, 2006 and January 15, 2007, Merchant was issued shares registered as employee stock by an S-8 registration for IEAM. Merchant is a corporation and therefore not eligible to receive stock registered in this manner. Upon information and belief, Merchant was not an "employee" of IEAM or Advanced Bio/Chem Inc.

28.     Upon information and belief, defendant Nexcore Capital Inc. is a corporation with offices at 480 Hampden Lane, Suite 200, Bethesda, MD 20814. On or about April 10, 2007 it was issued shares, by certificate RJD-999946, registered as employee stock by an S-8 registration for IEAM. Upon information and belief it was not an "employee" of IEAM or Advanced Bio/Chem Inc.

29.     Upon information and belief, defendant Northpoint Partners LLC is a limited liability corporation formed and existing under the laws of the State of Georgia, with offices at 11175 Cicero Drive, 200 Milton Park, Suite 575, Alpharetta, GA 30022. On or about March 22, 2007 and April 2, 2007, Northpoint was issued shares registered as employee stock by an S-8 registration for IEAM. Northpoint is a corporation and therefore not eligible to receive stock registered in this manner. Upon information and belief, Northpoint was not an "employee" of IEAM or Advanced Bio/Chem Inc.

30.     Upon information and belief, defendant James O'Callaghan is a resident of the City of Dublin in the Country of Ireland. On or about December 4, 2005 and February 16, 2006 he was issued shares registered as employee stock by an S-8 registration for IEAM. Upon information and belief, he was not an "employee" of IEAM or Advanced Bio/Chem Inc.

31.     Upon information and belief, defendant Charles Pedrani is a resident of the United States of America.  On or about September 21, 2006 he was issued shares, by certificate 004046, registered as employee stock by an S-8 registration for IEAM.  Upon information and belief he was not an "employee" of IEAM or Advanced Bio/Chem Inc.

32.     Upon information and belief, defendant John C. Pelegrino is a resident of the State of California.  On or about December 22, 2005 he was issued shares registered as employee stock by an S-8 registration for IEAM.  Upon information and belief, he was not an "employee" of IEAM or Advanced Bio/Chem Inc.

33.     Upon information and belief, defendant William Peterson is a resident of the State of Texas.  On or about August 24, 2005 he was issued shares registered as employee stock by an S-8 registration for IEAM.  Upon information and belief he was not an "employee" of IEAM or Advanced Bio/Chem Inc.

34.     Upon information and belief, defendant Quest Capital Markets, Inc. is a corporation formed and existing under the laws of the State of Texas.  On or about August 29, 2006 it was issued shares, by certificate 004038, registered as employee stock by an S-8 registration for IEAM.  Upon information and belief it was not an "employee" of IEAM or Advanced Bio/Chem Inc.

35.     Upon information and belief, defendant Myrna Robbins is a resident of the United States of America.  On or about September 21, 2006 she was issued shares, by certificate 004043, registered as employee stock by an S-8 registration for IEAM.  Upon information and belief she was not an "employee" of IEAM or Advanced Bio/Chem Inc.

36.     Upon information and belief, defendant Ruden McClosky Smith Schuster and Russell are a partnership formed and existing under the laws of the State of Florida.  On or about October 2, 2006 they were issued shares registered as employee stock by an S-8 registration for

IEAM. They are a partnership and therefore not eligible to receive stock registered in this manner. Upon information and belief, they were not an "employee" of IEAM or Advanced Bio/Chem Inc.

37.    Upon information and belief, defendant Donald Sapaugh is a resident of the State of Texas. On or about May 24, 2005 he was issued shares registered as employee stock by an S-8 registration for IEAM. Upon information and belief, he was not an "employee" of IEAM or Advanced Bio/Chem Inc.

38.    Upon information and belief, defendant Michael Joseph Seidelhuber is a resident of the State of California. On or about August 25, 2005 he was issued shares, by transfer to a Charles Schwab account #8064-2537, registered as employee stock by an S-8 registration for IEAM. Upon information and belief he was not an "employee" of IEAM or Advanced Bio/Chem Inc.

39.    Upon information and belief, defendant Neville West is a resident of the United States of America. On or about January 25, 2005, January 26, 2005 and June 9, 2005 he was issued shares registered as employee stock by an S-8 registration for IEAM. Upon information and belief, he was not an "employee" of IEAM or Advanced Bio/Chem Inc.

## FACTUAL ALLEGATIONS

40.    The future IEAM first came into existence in 2002, when John Mazzuto and others acquired an interest in EMC Packaging Inc., a private New Jersey-based company. Mazzuto then caused EMC to be merged into a publicly listed shell corporation called Advanced Bio/Chem Inc., a Texas-based company with no operations. After the deal, Advanced Bio/Chem changed its name to Industrial Enterprises of America Inc. EMC was the company's sole operating business at the time. It later acquired Unifide Industries LLC and Pitt Penn Oil Co.

41.    Sometime in late 2005, IEAM announced that Mazzuto had been elected as IEAM's Chief Executive Officer. He served in that capacity through February 2, 2008.

42.    During that period, Margulies, an attorney licensed by the State of Ohio, was a partner in the law firm of Margulies and Levinson, and he also controlled the Margulies Law Group. Margulies was CFO of IEAM from January 2006 until December 2006, when he became general counsel and head of compliance.

43.    After Mazzuto's resignation as CEO in early 2008, Margulies became the CEO of IEAM. He served in that position until March 2009.

44.    On May 24, 2010, Mazzuto and Margulies were both indicted by the District Attorneys' Office for New York County, together with ten yet-to-be-indicted co-conspirators. The 57 count indictment charged the pair with grand larceny, scheming to defraud and falsifying business records.

45.    As CEO, Mazzuto and Margulies caused IEAM to engage in a host of fraudulent activities, including, but not limited to, the filing of an array of fraudulent documents with securities regulators to give the appearance of a successful, well-capitalized company, when in reality IEAM was little more than a fraudulent enterprise.

46.    In total, the fraud amounted to more than $600 million.

47.    A key component of the fraud was that IEAM sold shares of stock, that were registered under an S-8 filing with the SEC to be distributed only to natural persons providing services to IEAM, and thus subject to restrictions under Rule 144, to the general public without any restrictions.

48.    In this way, Mazzuto and Margulies had found a method for IEAM to, essentially, print money by issuing phony stock. While the IEAM stock was supposed to go only to people who provided value to the company, Mazzuto and Margulies caused IEAM to sell this stock

directly to members of the public. They further caused IEAM to remove the restricted legend from the stock, so that the purchasers could immediately sell the stock in the open market, in violation of Rule 144.

49.     Financed by their fraud, Mazzuto and Margulies led lives of luxury. Among other spoils of his illegal conduct, Mazzuto owned luxury homes in New York, Southampton and Florida, purchased expensive jewelry and went on exotic vacations.

50.     Similarly, Margulies and his wife received more than $7.5 million in cash and proceeds of stock sales from IEAM related accounts.

51.     On January 24, 2005, IEAM filed a Form S-8 with the Securities and Exchange Commission that authorized IEAM to issue stock pursuant to an employee stock option plan (the "Stock Option Plan"). The Form S-8 authorized the issuance of up to 15 million shares of stock.

52.     The Stock Option Plan stated that it was intended to advance the interests of the company and its stockholders "by providing long-term incentives to those persons who are largely responsible for the management and growth of the business of the Company through granting equity incentives to Employees, Outside directors, and Consultants. To that end, the Company may, from time to time, award to Employees, Outside Directors or Consultants selected in the manner provided below, one or more Incentive Stock Options, Non-Qualified Options, Stock Appreciation Rights ("SARs"), or Shares of Restricted Stock subject to the conditions hereinafter set forth"

53.     Pursuant to the Stock Option Plan, therefore, IEAM was only permitted to issue shares to employees, officers, directors of IEAM, or consultants for IEAM. In other words, only natural persons who provided some service to IEAM were eligible to receive stock under the Stock Option Plan.

54.    On their face, but for a restricted legend, "S-8" shares are indistinguishable from publicly traded shares. However, "S-8" shares cannot be publicly traded unless the shareholder complies with Rule 144, and should have been issued with a legend indicating that they were so restricted.

55.    Finally, although the S-8 authorized the issuance of 15 million shares, a reverse stock split of 1 for 10 shares on May 31, 2006 should have reduced the amount of shares that could be issued to no more than 1.5 million.

56.    Notwithstanding the various restrictions on the issuance of "S-8" shares, Mazzuto and Margulies directed that IEAM shares be issued to various entities and individuals who did not meet the requirements of the S-8 (i.e., individuals and entities that never performed any services for IEAM). In addition, despite the fact that the "S-8" shares were restricted pursuant to Rule 144, Mazzuto and Margulies caused IEAM shares to be issued without any restrictions. As a result, upon information and belief, most, if not all, of the IEAM shares that were issued pursuant to the Stock Option Plan were sold immediately, in violation of Rule 144.

57.    In addition, many of the shares were sold after the May 31, 2006 reverse stock split, so as to take advantage of the enhanced prices. By doing this, Mazzuto and Margulies effectively increased the value of such shares ten-fold.

58.    Mazzuto and/or Margulies caused IEAM to transfer illegally issued stock to the defendants as follows (numbers reflect the result of the reverse 10 for 1 split):

| Name | Date of Transfer | Number of shares | Price per share * | Total value |
|---|---|---|---|---|
| Bruce Badeau | 03/09/05 | 10,000 | 5.10 | $51,000.00 |
| Doris Blau | 09/21/06 | 18,518 | 7.00 | $129,350.00 |
| Hunter M.A. Carr | 06/03/05 | 60,000 | 2.60 | $156,000.00 |
| Bernard J. Clinton | 09/20/05 | 660 | 1.65 | $1,089.00 |
| Roger W. Creery | 02/23/06 | 132,000 | 5.00 | $660,000.00 |
| Kenneth Crimmins | 02/24/05 | 5,000 | 4.10 | $20,500.00 |

| | | | | |
|---|---|---|---|---|
| Kenneth Crimmins | 02/24/05 | 5,000 | 4.10 | $20,500.00 |
| Johnny Deshotels | 09/15/05 | 2,500 | 1.75 | $4,375.00 |
| Lee Elwan | 05/18/07 | 20,000 | 5.39 | $107,800.00 |
| Lee Elwan | 12/29/05 | 10,000 | 1.50 | $30,000.00 |
| Mark Glatz | 03/09/05 | 2,000 | 5.10 | $10,200.00 |
| Mark Glatz | 04/22/06 | 10,000 | 3.40 | $34,000.00 |
| Marla Goodman | 08/20/07 | 5,000 | 3.25 | $16,250.00 |
| Graham Jones | 09/21/06 | 92,592 | 7.00 | $648,144.00 |
| Timothy J. Lawler | 09/29/06 | 18,518 | 7.00 | $129,626.00 |
| Timothy J. Lawler | 09/29/06 | 2,871 | 7.00 | $20,097.00 |
| Lindstrom III | 09/19/05 | 6,250 | 1.70 | $10,625.00 |
| Richard Loggie | 09/21/06 | 7,407 | 7.00 | $51,849.00 |
| Richard Martini | 08/30/06 | 5,000 | 7.65 | $38,250.00 |
| Merchant BanCorp of America | 07/28/06 | 57,500 | 6.75 | $388,125.00 |
| Merchant BanCorp of America | 01/16/07 | 40,000 | 4.95 | $198,000.00 |
| Nexcore Capital Inc. | 04/10/07 | 5,000 | 6.06 | $30,300.00 |
| Northpoint Partners, LLC | 03/23/07 | 20,000 | 5.90 | $118,000.00 |
| Northpoint Partners, LLC | 04/04/07 | 20,000 | 6.17 | $123,400.00 |
| James O'Callaghan | 02/17/06 | 60,350 | 4.15 | $250,452.50 |
| James O'Callaghan | 08/11/05 | 2,500 | 2.45 | $6,125.00 |
| James O'Callaghan | 12/06/05 | 10,000 | 1.20 | $12,000.00 |
| Charles Pedrani | 09/21/06 | 37,037 | 7.00 | $259,259.00 |
| John C. Pelegrino | 12/29/05 | 4,000 | 1.50 | $6,000.00 |
| William Peterson | 08/24/05 | 1,580 | 1.70 | $2,686.00 |
| Quest Capital Markets, Inc. | 08/29/06 | 12,500 | 7.57 | $94,625.00 |
| Myrna Robbins | 09/21/06 | 37,037 | 7.00 | $259,259.00 |
| Ruden McClosky Smith Schuster and Russell | 10/18/06 | 7,000 | 6.60 | $46,200.00 |
| Donald Sapaugh | 06/08/05 | 60,000 | 2.50 | $150,000.00 |
| Michael Joseph | 08/25/05 | 2,400 | 1.70 | $4,080.00 |

| Seidelhuber | | | | |
|---|---|---|---|---|
| Neville West | 01/27/05 | 50,000 | 2.50 | $125,000.00 |
| Neville West | 06/10/05 | 50,000 | 3.50 | $175,000.00 |
| Total | | 890,220 | | $4,388,166.50 |

*closing price as reported on NY Exchange on day of issue.

59.     Upon information and belief, shortly after each transfer of shares to each of the defendants, those shares were sold for the fair market price for unrestricted shares.

60.     The defendants were not entitled to receive such shares because the defendants were not employees, directors, officers or consultants of IEAM.

61.     The defendants received freely tradeable shares of IEAM, although the S-8 authorized only the issuance of restricted shares, which was how, upon information and belief, each defendant was able to sell the stock in the open market.

62.     On or about November 14, 2007, a shareholder of IEAM brought a class action against IEAM, and others, entitled Mallozzi v. Industrial Enterprises of America, et al., Case No. 07-CV-10321 (S.D.N.Y., filed Nov. 14, 2007)(the "Class Action").   In the Class Action, plaintiffs alleged that they suffered damages as a result of the actions perpetrated by Mazzuto, Margulies and others relating to issues other than the issuance of stock under the Stock Option Plan.

63.     On December 11, 2011, IEAM agreed to terms to settle the class action by committing to payment to the class of $3.8 million.   That settlement received preliminary approval of the U.S. District Court for the Southern District of New York on January 12, 2011, and is now awaiting final approval.

64.     As part of the Class Action settlement, IEAM received an assignment of all claims belonging to individual class members against all third-parties.

65.    Included within this assignment were any claims against defendants for the claims alleged herein.

66.    Mazzuto and Margulies' fraudulent scheme finally came to an end when, on May 24, 2010, Mazzuto and Margulies were both indicted by the District Attorney's Office for New York County, together with ten yet-to-be-indicted co-conspirators. The 57 count indictment charged the pair with grand larceny, scheming to defraud and falsifying business records.

67.    The pair is currently awaiting trial.

## CAUSES OF ACTION

## COUNT ONE

### FRAUD

68.    Plaintiff repeats and re alleges paragraph 1 – 67 set forth above as if they were fully repeated herein.

69.    Defendants participated in the fraudulent stock scheme because they knew or should have known that the stock was not properly issued to them because they were not eligible under the S-8 plan.

70.    Defendants each knew or should have known that such shares were not capable of being transferred to them by virtue of the restrictions imposed in the S-8 that such shares could only be distributed to natural persons who had performed services for IEAM, and defendants did not meet both of these requirements.

71.    In addition, defendants each knew or should have known that such shares were not freely tradeable in the open market, but were restricted pursuant to Rule 144.

72.    Nevertheless, upon information and belief, each defendant sold IEAM stock almost immediately upon receipt.

73.    By joining in the stock scheme defendants diverted equity from IEAM causing a detriment to IEAM and its shareholders.

74.    Finally, to the extent that the shares at issue are not "property" belonging to the bankrupt estate it is undeniably property belonging to shareholders of the estate.  Pursuant to the Assignment Agreement, the bankrupt estate is the holder of all outstanding claims owned by its shareholders, including, but not limited to these claims against Defendants.

## COUNT TWO

### UNJUST ENRICHMENT

75.    Plaintiff repeats and re alleges paragraph 1 – 74 set forth above as if they were fully repeated herein.

76.    By the facts set forth above, Defendants have each been unjustly enriched by their respective receipt of the illegally issued shares.

77.    At the same time, IEAM has suffered an impoverishment of this same amount.

78.    There is no justification for defendants enjoying such unjust enrichment or for IEAM suffering such impoverishment, and in equity and good conscience the conveyance of illegally issued stock from IEAM to defendants should be rescinded and all benefits inuring to defendants as a result of that transfer should be returned to IEAM.

79.    Accordingly, each defendant has been unjustly enriched in an amount to be determined at trial, and such amounts should be returned to Plaintiff.

## COUNT THREE

### CONVERSION

80.    Plaintiff repeats and re alleges paragraph 1-79 set forth above as if they were fully repeated herein.

81.    Plaintiff was the owner of the equity represented by the shares wrongfully issued to defendants.

82.    Defendant wrongfully participated in the wrongful issuance of the shares or wrongfully accepted the shares.

83.    Plaintiff has suffered a diminution of its equity and thus has suffered a detriment from defendants' actions.

## COUNT FOUR

### CONSPIRACY

84.    Plaintiff repeats and re alleges paragraph 1-83 set forth above as if they were fully repeated herein.

85.    Defendants agreed to act in concert to benefit from wrongfully issued shares of plaintiff.

86.    Defendants violated the Securities Laws of the Federal Government and the State Government by participating in the wrongful issuance and distribution of shares under an S-8 plan filed with the SEC.

87.    Defendants did this for their own personal enrichment and not for the benefit of IEAM.

## COUNT FIVE

### 11 U.S.C. § 548

88.    Plaintiff repeats and re alleges paragraph 1-87 set forth above as if they were fully repeated herein.

89.    The issuance of stock to defendants constituted transfers of interest of property of IEAM or its assignees within the meaning of 11 U.S.C. § 548.

90.    The transfers were made with the actual intent to hinder, delay or defraud creditors.

91.    At the time of each transfer of stock to Defendants, IEAM (i) was insolvent under 11 U.S.C. § 548(a)(1)(B)(ii)(I); (ii) was engaged in business or a transaction (including the perpetration of the stock fraud scheme) for which any property remaining with IEAM was an unreasonably small capital within the meaning of section 11 U.S.C. § 548(a)(1)(B)(ii)(II); and (iii) intended to incur, or believed that it would incur, debts that would IEAM would not be able to repay as they matured (as IEAM generally had no intention of paying its debts) pursuant to 11 U.S.C. § 548(a)(1)(B)(ii)(III).

92.    To the extent that the statutory period is two years prior to the Petition Date the transfers of stock occurred outside of the statutory period, it should be equitably tolled based on the unlawful conduct of IEAM's management and the Defendants' fraudulent concealment, adverse domination and because the transfers in question were made as part of an ongoing course of fraudulent conduct. In particular, Defendants actively participated in the knowing concealment of the transfers from the public, IEAM's creditors and investors, so that the transfers were not discovered until after the Petition Date and could not, with due diligence, have been discovered earlier.

93.    The stock issuances set forth above are avoidable transfers and should be avoided under 11 U.S.C. § 548(a).

<u>COUNT SIX</u>

**FRAUDULENT CONVEYANCE / 11 U.S.C. § 544(b)**

94.    Plaintiff repeats and realleges paragraphs 1 - 93 set forth above as if they were fully repeated herein.

95.    Each transfer of stock set forth above was part of an on-going scheme by Mazzuto and Margulies to defraud IEAM.

96.    IEAM did not receive value in exchange for the transfer of the shares set forth above.

97.    IEAM was insolvent at the time of the stock issuances set forth herein.

98.    Defendants unlawfully benefitted from the on-going scheme to defraud IEAM because they knew, or should have known, that IEAM could not issue unrestricted stock under the S-8 or the Stock Option Plan because, among other reasons: (i) they had not performed any services to benefit IEAM; (ii) stock issued under the S-8 was, by law, restricted; and (iii) only natural persons were eligible to receive stock under the Stock Option Plan.

99.    The shares issued to each defendant were issued illegally and in violation of the federal securities laws.

100.    Knowing that the shares had been illegally issued, Defendants nevertheless accepted the shares, and then sold them in the open market.  By such acts, Defendants defrauded IEAM and its creditors.

101.    IEAM received no consideration for the shares issued to defendants.  By contrast, the shares received by Defendants were sold in the open market for 100% of the value of such shares.

102.    At the time the shares described above were issued to Defendants, IEAM was engaged in a business or a transaction, or was about to engage in a business or a transaction (including the perpetration of the stock fraud scheme) for which any property remaining with IEAM was unreasonably small capital.

103.    At the time the stock was issued to Defendants, IEAM intended to incur, or believe that it would incur, debts that it would not be able to repay as they matured. IEAM had no intent to repay creditors at the time of the transfer.

104.    IEAM never received reasonably equivalent value for the shares described above.

105.    Pursuant to 11 U.S.C. § 544(b), the transfers of stock described above are avoidable by creditors holding unsecured claims allowed under 11 U.S.C. § 502.

106.    IEAM demands the return of the fraudulent transfers, including the proceeds of the sale of the shares in IEAM set forth above.

## COUNT SEVEN

### RECOVERY OF AVOIDED TRANSFERS – 11 U.S.C. § 550

107.    Plaintiff repeats and re alleges paragraph 1-106 set forth above as if they were fully repeated herein.

108.    The transfer of the shares to the defendants is avoidable under either 11 U.S.C. §§ 544 and 548.

109.    Defendants each knew or should have known that such shares were not capable of being transferred to them by virtue of the restrictions imposed in the S-8 filing with the SEC that such shares could only be transferred to natural persons who had performed services for IEAM, and that defendants did not meet these requirements.

110.    Each defendant was an initial transferee, the immediate or mediate transferee of the initial transferee and/or a person for whose benefit the transfers were made.

111.    Pursuant to 11 U.S.C. § 550(a), plaintiff is entitled to recover from defendants the value of the stock transfers.

WHEREFORE, Plaintiff IEAM requests that this Court award it the following relief:

a.   Judgment on its claims against each defendant.

b.   Damages in an amount to be determined at trial.

c.   Pre- and post-judgment interest.

d.   Costs of suit, including reasonable attorney's fees.

e.   Such other and further relief as the Court deems just and proper.

DATED:  April 29, 2011

Christopher D. Loizides (No. 3968)
LOIZIDES, P.A.
1225 King Street, Suite 800
Wilmington, DE 19801
Telephone:     (302) 654-0248
Facsimile:     (302) 654-0728
E-mail:        loizides@loizides.com

- and -

Timothy C. Walsh
EPSTEIN & CRESCI, PC
7 Dey Street, 11th Floor
New York, NY  10007
Telephone:     (212) 233-8300
Facsimile:     (212) 233-8325

*Counsel to Plaintiff IEAM*

PAVIA & HARCOURT LLP
590 Madison Avenue
New York, NY  10022
Telephone:     (212) 980-3500
Facsimile:     (212) 735-7918

*Of Counsel*